Billy Clifton FAST, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–87–146–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 7, 1988.

---

**516**

Mary B. Hennessy, Houston, for appellant.

John B. Holmes, Jr., Timothy G. Taft, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

MURPHY, Justice.

This is an appeal from a conviction following a jury verdict against the appellant for aggravated robbery under TEX.PENAL CODE ANN. section 29.03 (Vernon 1974). Punishment was assessed by the jury at thirty eight years confinement in the Texas Department of Corrections after finding the enhancement paragraph included in the indictment as true. Appellant brings six points of error which essentially complain that the trial court erred in two ways; (1) by overruling his motion to suppress certain evidence and (2) by including in the jury charge, at the punishment phase, an instruction on the law of parole. We affirm.

The facts show that an Officer Pratt received information concerning two possible felons on the evening of May 4, 1986. This came about as the result of another officer referring Pratt over to an informer by the name of Brian Finch. Finch told the officers that a few days before, he heard the appellant talking about a robbery he had committed at a convenience store. Finch also told the officers that appellant could be found at his, Finch's, apartment and he gave the officers that address. Very shortly after talking with Finch, Pratt received additional information concerning another felon who was reportedly located at the same apartment that Finch was purportedly renting. After receiving this information, Pratt immediately drove to the apartment complex and met Finch in the parking lot. At that time Finch told Pratt that the apartment Pratt was investigating was his and that he was the only person on the lease. Finch then gave Pratt his permission to enter and search the apartment. Upon entering the apartment Pratt found six people, the appellant among them, along with items of physical evidence which were similar to what the victim of the robbery in appellant's case had described. The pieces of physical evidence which were photographed, taken into custody and used at trial, were a curved blade knife and some hats.

Appellant's first three points attack the trial court's ruling allowing the evidence from the alleged unlawful warrantless search by Pratt of the apartment. Appellant argues that no probable cause existed, no exigent circumstances existed to justify the warrantless search, and no valid consent was given. We disagree, noting that neither probable cause nor a search warrant is necessary *if* consent to a search is given. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Rumbaugh v. State,* 629 S.W.2d 747, 751 (Tex.Crim.App.1982).

The record shows that Pratt had effective consent from Finch to search the apartment.

Both of the officers who spoke with Finch testified that he told them that the appellant could be found at *his*, Finch's, apartment. Finch also told the officers that he was the only person named on the lease for the apartment. Evidence elicited from the leasing manager for the apartment complex substantiated the fact that Finch was the only person on the lease and the sole person legally responsible for the apartment. Moreover, the only person the manager had met concerning renting that apartment, was Finch.

The appellant presented the only evidence which was completely inconsistent with Finch's authority to give consent to search the apartment. He testified that he and Finch had originally shared the apartment, but that Finch had subsequently moved out and left the keys with him. According to the appellant, Finch had allegedly moved in early April and since that time he did not have appellant's permission to enter the apartment. There was additional testimony from Pratt that Finch had told him that he had moved the day before their conversation.

As the trier of fact in a motion to suppress, the trial judge determines the credibility of the witnesses and the weight to be given their testimony. *Kelly v. State*, 669 S.W.2d 720, 726 (Tex.Crim.App. 1984). The court was free to reject all of the appellant's testimony concerning his exclusive authority over the apartment. The only other evidence which could have casted doubt over Finch's continuing authority to give his consent to search the apartment was Pratt's statement that Finch had told him that he had moved out the day before to live with his wife. However, this, without more, does not negate Finch's authority to give his consent to search the apartment. Further evidence was not elicited on the subject. If, arguendo, Finch had moved out the day before, and had given his consent to the police to search the apartment, the record reflects that he was still legally responsible for the apartment

and named on the lease as the only occupant thereof. The lease, which was made a part of the record, strictly provided that absent the "owner's" prior written notice, such "owner" would remain fully liable under the lease in the event of a change or replacement of co-residents or occupants. This Court may not disturb any finding from a hearing on a motion to suppress which is supported by the record. *Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App. 1980). Appellant's first three points are overruled.

In his last three points of error, appellant contends that the trial court committed fundamental error by including in the jury charge an instruction on the law of parole over his objection to TEX.CODE CRIM. PROC.ANN. art. 37.07, § 4 (Vernon Supp. 1988). It would appear that the Court of Criminal Appeals' recent decision on motion for rehearing in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App., 1988), is controlling on this issue. Writing for the court en banc, Justice Campbell reexamined the original opinion in *Rose* and announced that because article 37.07, § 4(a) was unconstitutional for violation of the separation of powers and due course of law provisions of the Texas Constitution, it was void from its inception and therefore was not subject to waiver by an appellant's failure to object. TEX.R.APP.P. 81(b)(2) dictates the harm analysis we now apply as follows:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

Suggested factors of consideration for determining whether the error was harmless pursuant to the cited standard include: whether the jury was given a curative instruction, whether the facts of the offense "militate" in favor of the sentence imposed and whether the appellant had a criminal record. *Rose*, 752 S.W.2d at 554. In the case before us part of the jury's curative in-

struction was almost identical to that cited in *Rose. See id.* Included in the jury's instructions were the following:

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
>
> \* \* \* \* \* \*
>
> [Y]ou are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.
>
> You are not to discuss among yourselves how long the accused would be required to serve the sentence that you impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas, and must not be considered by you.

The offense appellant was convicted of committing was, indeed, a violent offense against a person. The evidence showed that the appellant purposely waited for the complainant to be left alone in the grocery store where she was employed before entering and robbing the store. Barbara Ward, the complainant, described how the appellant first came into the store, at about 10:30 p.m., obviously drunk, seeking restroom facilities. Ward's manager who was also in the store at that time, left shortly after appellant. However, ten minutes later, when Ward was by herself in the store, the appellant reentered, grabbed her by her left arm and placed a knife against her back. In fear for her life, Ward opened the register and allowed appellant to take the money. Ward, a mother of four sons, indicated to the jury that she was not only terribly frightened by the experience, but she continues to suffer emotional trauma from it.

Finally, the jury was asked to find on the enhancement paragraph of the indictment for the felony offense of delivery of methamphetamine. Upon finding it true, they were charged with assessing punishment at confinement in the Texas Department of Corrections for a term of not less than fifteen years nor more than ninety-nine years or life, and a possible fine of $10,-000.00. When we consider the curative instruction included in the charge, (which this court must presume the jury followed), the facts of the case and the enhancement charge, we conclude that the jury's finding of thirty eight years and no fine is a reasonable assessment of punishment. Consequently, we determine beyond a reasonable doubt that the error created by instructing the jury on the parole law did not contribute to the punishment in this case.

Appellant's last three points are overruled and the judgment is affirmed.